## No. 2824.

### EDWARD NEWMAN & Co. v. JOHN SMOKER and als.

The common carrier is bound faithfully to perform his duty and he is responsible for the loss or damage resulting to the cargo confided to him, from neglect, imprudence, or want of skill, notwithstanding the stipulation to the contrary in the bill of lading.

But in a case like this, where the shippers or their agents were present at the taking of the cotton on board the boat, and knew from the rain storm then prevailing, that the cotton must necessarily be exposed to the rain and mud, it would be inequitable to permit the owners or their consignees to recover from the boat or its owners, the amount of the damages occasioned by this exposure, when the agent of the shippers accepted the bill of lading, prepared by himself, containing the clause : " The boat not to be responsible for torn bagging, ropes or bands off, wet by rain, old damage or mud."

APPEAL from the Seventh District Court, parish of Orleans. *Collens*, J. *D. C. Labatt*, for plaintiffs and appellants. *R. H. Marr* and *J. N. Brickell*, for defendants and appellees.

Justices concurring : Ludeling, Wyly, Morgan.

WYLY, J. The plaintiffs, who sued the defendants, the owners of the steamboat "Governor Allen," for $819 37 damages to a cargo of

cotton shipped on said boat from Grand Gulf November 24, 1868, appeal from the judgment rejecting their demand.

It is conceded that the cotton was badly damaged on reaching New Orleans, its destination, and the amount of said damage is not disputed.

The cotton came from Port Gibson by railroad to Grand Gulf, and was there shipped by the agent of the railroad on the "Governor Allen." It was taken on the boat during a severe rain. "The surface of the ground between the warehouse, from which the cotton was taken, and the boat, was covered with water and slushy mud, through all of which the cotton was rolled, a distance of about one hundred yards; on arriving at the landing, the 'Governor Allen' found the 'Belle Lee' occupying the usual landing place, and was compelled to take another position about one hundred feet above the 'Belle Lee.' The 'Belle Lee' occupied her position during nearly the entire time consumed by the 'Governor Allen,' in getting the cotton on board. The cotton was shipped by the P. G. G. G. R. R. Co., two of whose agents and employes were present at the time the cotton was taken on the 'Governor Allen,' one a shipping agent of said railroad; both participated in and assisted the delivery of the cotton to the boat. It was stored on the boat in the usual way, a portion in the engine room, a portion on the guards. That portion on the guards was covered by tarpaulins, except when the boat was engaged in receiving cotton at subsequent landings, and was delivered in New Orleans within forty-eight hours after its receipt on the boat, and thence removed by plaintiffs to the press, in a wet and muddied condition."

It was the water and mud to which the cotton was exposed while being delivered on the boat that occasioned the damage of which the plaintiffs complain.

The bill of lading contained the clause: the "boat not to be responsible for torn bagging, ropes or bands off, wet by rain, old damage or mud."

The common carrier is bound faithfully to perform his duty, and he is responsible for the loss or damage resulting to the cargo confided to him, from. neglect, imprudence or want of skill, notwithstanding the stipulation to the contrary in the bill of lading.

But in a case like this, where the shippers or their agents were present at the taking of the cotton on board the boat, and knew from the rain storm prevailing at the time that the cotton must necessarily be exposed to the rain and mud, it would be inequitable to permit the owners or their consignees to recover from the boat or its owners the amount of the damages occasioned by this exposure, when the agent of the shippers accepted the bill of lading (prepared by himself) containing the clause limiting the liability of the boat as aforesaid.

Without this limitation it is fair to presume that the boat, under the circumstances, would not have received the cotton, because the clerk testifies that "there was no objection by the shippers, that is, Mr. Kearny, agent of the railroad, to the boat receiving the cotton in the rain and mud. He offered to allow us to take any exceptions that we wanted in the bill of lading; Mr. Kearny brought the bill of lading which was signed by the boat. The effect of the exception was discussed on the boat after the cotton was all aboard, and it was the opinion of all present that the exception was sufficient to cover any damage or losses on the cotton occasioned by wet and mud." * * *

Considering the evidence of this case, we are of the opinion that the court a qua. did not err in rendering judgment for the defendants.

Judgment affirmed.

Rehearing refused.